UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

LOGAN DYJAK,                          )
                    Plaintiff,        )
                                      )
        v.                            )        No.: 21-cv-3206
                                      )
JB PRITZKER, et. al.,                 )
                                      )
                    Defendants.       )

## **OPINION**

Plaintiff Logan Dyjak is a civil detainee in the custody of the Illinois Department of Human Services after having been adjudicated not guilty by reason of insanity (NGRI) on a murder charge. *See Dyjak v. Horstman*, No. 21-3151-JES, 2024 WL 646343, at *1 (C.D. Ill. Feb. 15, 2024). Plaintiff is civilly committed to the Packard Mental Health Center in Springfield, Illinois, and sued under 42 U.S.C. § 1983 alleging violations of their[1] constitutional rights. As a result of their NGRI status, Plaintiff is considered a civil detainee rather than a prisoner. *See Dyjak v.*

---

[1] Plaintiff uses they/them pronouns and courts including the Seventh Circuit have followed this practice in rulings in Dyjak's cases. *E.g., Dyjak v. Harper*, No. 22-1419, 2023 WL 5928160, at *1 (7th Cir. Sept. 12, 2023).

*Harper*, No. 22-1419, 2023 WL 5928160, at *3 (7th Cir. 2023).

Defendants have filed a Motion for Summary Judgment (Doc. 40) and an accompanying Memorandum (Doc. 41). Plaintiff has filed a Response (Doc. 54) and Defendants a Reply (Doc. 59). For the reasons indicated herein, Defendants' Motion for Summary Judgment is GRANTED.

## PRELIMINARY MATTERS

**<u>Prior lawsuit</u>**. Plaintiff filed another suit related to his visitation privileges at Packard – C.D. Ill. Case. No. 21-cv-3084-JES – in October 2021. That suit related to Plaintiff's visitation privileges from when he arrived at Packard through early February, 2019. That case was dismissed with prejudice because Plaintiff's allegations fell outside the statue of limitations, and Plaintiff's appeal was dismissed. C.D. Ill. Case. No. 21-cv-3084-JES at Docs. 6, 17. This Order therefore addresses only possible claims that arose from February 2019 onward.

**<u>Plaintiff's request for oral argument</u>**. Plaintiff requests oral argument on the summary judgment pleadings. The Court finds that oral argument would not materially assist. Plaintiff's Motion for

Oral Argument (Doc. 53) is DENIED. *Williams v. Swenson*, 747 F. App'x 432, 434 (7th Cir. 2019).

**Request to alter case caption**. Plaintiff moves to alter the case caption because Defendant Miller (sued in both her individual capacity and in her official capacity as Hospital Administrator at Packard) is no longer the Hospital Administrator, having been replaced by Sarah Broyles. Defendants object, asserting that Miller was only sued in her individual capacity and that no claim for injunctive relief is pending. Doc. 51 at 2.

Plaintiff plainly asserts in the Complaint that "all Defendants are sued in their individual capacities." (Doc. 1) at ¶6. The Court's Merit Review Order states "the Court finds that Plaintiff states a plausible claim against Defendants Miller and Patarozzi for an unconstitutionally restrictive policy on visitation rights." (Doc. 9) at 3. The Court did not find Plaintiff sought to assert official-capacity claims because Plaintiff plainly stated he was asserting only individual capacity claims.

Plaintiff's Motion (Doc. 45) is DENIED.

## MATERIAL FACTS

At all relevant times Plaintiff was a post-acquittal detainee held at Packard under the authority of the Illinois Department of Human Services.

Defendant Miller was at relevant times the Hospital Administrator at Packard. Miller oversaw general operations including patient care, patient safety, employment safety, and staff management. Though Miller states she "had nothing to do with the visitor policies or restricting any visits specifically to Plaintiff," Doc. 41 at ¶23, Plaintiff's Affidavit (Doc. 54-3), a reasonable finder of fact could find Defendant Miller was personally involved in visitation decisions.

Defendant Patarozzi was the Treatment Services Administrator. She was "part of the leadership team," Doc. 41 at ¶24, and "the leadership team set the visitation schedule and [made] visitation policy." *Id.*

Visitor policies changed to be more restricted in October 2019, were highly restricted due to COVID-19 protocols from March 2020 through February 2022, and in February 2022 resumed in a

somewhat less-restricted form, though still more restricted than
before October 2019.

Plaintiff repeatedly complained to the Illinois Department of
Human Services Human Rights Committee about restrictions on
visitation, and the Committee substantiated violations of Illinois
statute due to restrictions on detainees' right to have visitors. *See,
e.g.*, Doc. 54-3 at 9 (Miller acknowledging finding in letter dated
August 26, 2019); Doc. 54-3 at 24-29 (report substantiating finding
of rights violations caused by restrictions on visitation and noting
that staff interviews indicated significantly more restrictive
visitation practices than reflected in printed policies).

## ANALYSIS

A. First Amendment Freedom of Association

Plaintiff's claim is that restrictions of his visitation with his
mother and friends violated his constitutional rights.

"An inmate does not retain rights inconsistent with proper
incarceration," and "freedom of association is among the rights least
compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126,
131 (2003). Nonetheless, it is not the case "that any right to
intimate association is altogether terminated by incarceration or is

5

always irrelevant to claims made by prisoners." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003); *see also Easterling v. Thurmer*, 880 F.3d 319, 322 (7th Cir. 2018) ("Prisoners retain a limited constitutional right to intimate association ….").

The Court is sensitive to Plaintiff's status as a detainee rather than as a convicted prisoner. He cannot be punished as a detainee. In this scenario, though, the rational relationship test from *Turner v. Safley*, 482 U.S. 78 (1987) is the "appropriate structure" to assess such claims, because considerations of institutional security, maintaining order, and maintaining safety of detainees and the public remain legitimate State interests in the civil detention context. *Brown v. Phillips*, 801 F.3d 849, 853 (7th Cir. 2015). "*Turner* requires that, for the state to restrain a civil detainee's First Amendment rights, the restraint must be rationally connected to the state's interests …." *Id.*

Plaintiff argues the "professional judgment" standard from *Youngberg v. Romero*, 457 U.S. 307 (1982), should apply. The Court disagrees. "As we have previously explained, *Youngberg* does not require professional judgment to dictate every aspect of civil commitment—just decisions about mental health treatment." *Dyjak*

6

*v. Harper*, No. 22-1419, 2023 WL 5928160, at *4 (7th Cir. Sept. 12, 2023) (finding objective unreasonableness standard from *Kinglsey v. Hendrickson*, 576 U.S. 389, 396–97 (2015) properly governed Plaintiff's conditions of confinement claims, rather than *Youngberg*).

    *Turner* identified the following factors relevant to determining whether a First Amendment restriction is reasonably related to a legitimate government interest: 1) whether the restrictions are rationally connected to achieving the stated legitimate and neutral governmental interests; 2) whether the detainees have alternate ways to exercise their First Amendment rights; 3) whether and to what extent accommodating Plaintiffs would adversely impact staff and other detainees; and, 4) whether the restrictions are an "exaggerated response," for example if "ready alternatives" for achieving the same interests exist. *Turner*, 482 U.S. at 78–79.

    Though this case presents a close call, the Court finds a reasonable finder of fact could determine that Defendants violated Plaintiff's First Amendment right to freedom of association. Most notably for purposes of this Order is that fact that the Human Rights Committee substantiated violations of Plaintiff's rights under Illinois law. Though these findings are by no means determinative of

Plaintiff's constitutional claim, at summary judgment they provide evidence that, combined with the other evidence in the record, could allow a reasonable jury to find Defendants did violate Plaintiff's First Amendment rights.

B. Qualified Immunity on Freedom of Association Claim

Defendants Miller and Patarozzi argue they are entitled to qualified immunity on Plaintiff's First Amendment freedom of association claim.

To determine whether an official is entitled to qualified immunity, a two-part inquiry is required: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Courts may exercise their discretion in deciding which of the two prongs should be addressed first in the circumstances in the case at hand. *Pearson v. Callahan*, 555 U.S. 223, 233 (2009).

The Court finds that Defendants are entitled to qualified immunity on Plaintiff's First Amendment freedom of association claim. The rights at issue for qualified immunity purposes must be defined with enough factual specificity to give clear direction to

8

prison officials that what they are doing violates the law. Reciting a general right is not enough. *See Kemp v. Liebel*, 877 F.3d 346 (7th Cir. 2017) (affirming qualified immunity, and holding that *Turner* merely creates a generalized framework to analyze claims and cannot create clearly established law outside an obvious case).

Plaintiff has not identified a clearly analogous case where a Court has determined that visitation restrictions of the kind at issue here have led to individual liability under § 1983, and the Court has not identified any such precedent either.

The right Plaintiff pursues here cannot be said to have been clearly established. Defendants are therefore entitled to qualified immunity on these claims.

C. First Amendment Retaliation

Plaintiff's complaint did not seek to pursue relief on a First Amendment retaliation theory, nor did his allegations assert that any action by Defendants was taken in retaliation for Plaintiff's exercise of his First Amendment rights. The Court's merit review order does not authorize a retaliation claim. Plaintiff did not seek to amend his complaint to add a First Amendment retaliation claim. Although shortly before Defendants filed their summary judgment

9

motion Plaintiff sought to amend his complaint, see (Doc. 37),
Plaintiff did not attach a proposed amended complaint and did not
specify what amendments he would have sought. The Court denied
that motion because the Court had already granted Plaintiff
multiple extensions of time to complete discovery and because the
Court found it unreasonable to further delay adjudication of the
case.

Based on these facts there is no First Amendment retaliation
claim pending before the Court.

Nonetheless, Defendants' brief includes a section dedicated to
First Amendment retaliation. In response, Plaintiff includes
extensive briefing seeking to demonstrate that Defendants' actions
could support such a claim.

Even if such a claim was before the Court it would fail.

To make out a prima facie case of First Amendment
retaliation, a plaintiffs must establish that she (1) engaged in
activity protected by the First Amendment, (2) suffered a
deprivation that would likely deter a person of ordinary firmness
from engaging in First Amendment activity in the future, and (3)
that the First Amendment activity was "at least a motivating factor"

10

in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *see also Daugherty v. Harrington*, 906 F.3d 606, 610 (7th Cir. 2018).

Plaintiff has engaged in protected activity, in filing many lawsuits, complaints, grievances, and requests for investigations.

Plaintiff has failed to put forth evidence from which a reasonable jury could determine that a person of ordinary firmness would be deterred from undertaking future protected activity based on Defendants' actions. Plaintiff argues at length that they are not a person of ordinary firmness, Doc. 54-1 at 58, but that argument support's Defendants' view that under the relevant objective test (i.e., a person of ordinary firmness would be deterred) no jury could find retaliation.

Plaintiff has also failed to show that they were targeted for more restrictive visitation rights due to their protected activities. Plaintiff acknowledges that the visitation policies at issue "were blanket policies which affected Plaintiff even as they applied and apply to each and every patient at the hospital." Doc. 54-1 at 22. Plaintiff has put forth insufficient evidence for a reasonable finder of fact to determine that Defendants were personally involved with

11

altering Packard's visitation policies for the purpose of retaliating against Plaintiff for exercise of their First Amendment rights.

## CONCLUSION

For the reasons stated above, the Court hereby GRANTS Defendants' Motion for Summary Judgment [40], [41], DENIES Plaintiff's Motion to Alter Caption [45], and DENIES Plaintiff's Motion for Oral Argument [53]. The Clerk is directed to enter judgment for Defendants and against Plaintiff and close this case.

ENTERED: This 29th of March, 2024.

___s/Sue E. Myerscough___
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE